IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FOUNDATION FOR ELDERCARE *et al.*, *Plaintiffs* | : : : : | CIVIL ACTION |
| v. | : : | |
| ROCCO J. CRESCENZO, *Defendant* | : : : | No. 20-2190 |

## MEMORANDUM

PRATTER, J.                                                       JULY 14, 2021

       Foundation for Eldercare ("the Foundation") and its Executive Director and trustee—John G. Berg—brought this action against Rocco J. Crescenzo, a former board member. Plaintiffs allege that Mr. Crescenzo's actions caused the Foundation and Mr. Berg damages due to a loan default, unpaid taxes, and other adverse financial obligations. The Court previously granted without prejudice Mr. Crescenzo's motion to dismiss two of the original Complaint's six counts. Plaintiffs filed an Amended Complaint,[1] and Mr. Crescenzo now moves to dismiss the same two counts that he previously attacked. For the following reasons, the Court denies the motion.

### BACKGROUND

       Writing for the benefit of the parties, the Court assumes their basic familiarity with the facts of this case.[2] The Foundation is a non-profit organization, of which Mr. Berg serves as

---

[1]    The Amended Complaint states that several documents were attached to it as Exhibits A, B, and C. Although the Amended Complaint did have an "Exhibit A," it was a copy of the Court's prior order granting without prejudice Mr. Crescenzo's motion to dismiss, not the "Memorandum of Lease" described in the Amended Complaint as Exhibit A. Am. Compl. ¶ 7. Further, the documents described as Exhibits B and C, *id.* ¶¶ 7, 46, were not attached to the Amended Complaint. The original Complaint, describing these same documents, did include them as Exhibits A, B, and C. With the filing of an amended pleading, its predecessor is no longer the operative claim document.

[2]    *See Found. for Eldercare v. Crescenzo*, No. 20-cv-2190, 2021 WL 768063, at *1 (E.D. Pa. Feb. 26, 2021).

1

Executive Director and as a trustee. Am. Compl. ¶¶ 1, 4. Mr. Crescenzo previously served as Chairman of the Foundation's Board of Trustees. *Id.* ¶ 4. Plaintiffs allege, among other things, that Mr. Crescenzo failed to pay the Foundation's property taxes and caused the Foundation to default on a loan that he had personally guaranteed. *Id.* ¶¶ 5, 7, 12.

Around 2018, Mr. Berg allegedly asked Mr. Crescenzo to either pay the property taxes or loan the Foundation the necessary funds so it could pay the taxes. *Id.* ¶¶ 37, 51. Mr. Crescenzo declined to do either. *Id.* ¶ 38. Mr. Berg alleges that, instead, Mr. Crescenzo proposed lending him $180,000 personally, which Mr. Berg could then use to pay the Foundation's outstanding taxes. *Id.* ¶¶ 38-39, 52. Mr. Berg claims that he and Mr. Crescenzo met at a bank in Wayne, Pennsylvania on March 15, 2019, where Mr. Berg signed an indenture of mortgage, listing his house as collateral for the $180,000 loan, and recorded it in Delaware County later that day.[3] *Id.* ¶¶ 41-42, 54-55. About an hour later, Mr. Berg then allegedly called Mr. Crescenzo and asked him to fund the agreement, but Mr. Crescenzo refused. *Id.* ¶¶ 43, 45, 57.

The Board removed Mr. Crescenzo as a trustee and as Chairman in June 2019. *Id.* ¶ 15. A few months later, Mr. Crescenzo brought suit in Pennsylvania state court against the Foundation, seeking Mr. Berg's removal as Executive Director and a judicial declaration that the discharge vote that had removed Mr. Crescenzo was ineffective. *Id.* ¶ 16. Shortly after giving a deposition in September 2019, Mr. Crescenzo voluntarily dismissed the state court litigation. *Id.* ¶ 18.

In May 2020, the Foundation and Mr. Berg commenced the instant action against Mr. Crescenzo. They later filed an Amended Complaint. Mr. Crescenzo moves to dismiss the Amended Complaint's claims for malicious prosecution (Count II) and fraud (Count V).

---

[3] The Court highlights an internal inconsistency within the Amended Complaint: in Count IV it states that the indenture of mortgage was recorded on October 18, 2019. Am. Compl. ¶ 42. Then, in Count V, it states that the indenture of mortgage was recorded on March 15, 2019. *Id.* ¶¶ 55-57. This inconsistency was not noted in the original Complaint because there were no dates listed in the fraud claim.

2

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

"The Third Circuit instructs the reviewing court to conduct a two-part analysis. First, any legal conclusions are separated from the well-pleaded factual allegations and disregarded. Second, the court determines whether the facts alleged establish a plausible claim for relief." *Satterfield v. Gov't Ins. Employees Co.*, No. 20-cv-1400, 2020 WL 7229763, at *1 (E.D. Pa. Dec. 8, 2020) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)). A plaintiff fails to demonstrate an entitlement to relief where the facts only allow the court to infer "the mere possibility of misconduct." *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A party must state with particularity the circumstances constituting fraud or mistake, although malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). "To satisfy the Rule 9(b) pleading requirements, a complaint may either describe 'the circumstances of the alleged fraud with precise allegations of date, time, or place' or may use 'some [other] means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Processed Egg Prod. Antitrust Litig.*, 851 F. Supp. 2d 867,

880 (E.D. Pa. 2012) (alterations in original) (quoting *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002)).

## DISCUSSION

Mr. Crescenzo again asks the Court to dismiss the Foundation's malicious prosecution claim (Count II) and Mr. Berg's claim for fraud (Count V) for failure to state a claim under Rule 12(b)(6). Regarding malicious prosecution, Mr. Crescenzo argues that the Foundation has failed to allege any facts to show that he initiated the earlier state court litigation without probable cause and for an improper purpose. As to fraud, Mr. Crescenzo now argues that Mr. Berg's fraud claim is barred by the "gist of the action" doctrine and that the alleged oral contract is unenforceable because it was not in writing, as required by the statute of frauds.

### I.  Wrongful Use of Civil Proceedings

In Pennsylvania, a person who wrongfully initiates civil proceedings against another is liable if:

> (1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
> (2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. § 8351. This statute is commonly known as "the Dragonetti Act." To prevail on such a claim, a plaintiff must prove that:

> (1) The defendant has procured, initiated or continued civil proceedings against him.
> (2) The proceedings were terminated in his favor.
> (3) The defendant did not have probable cause for his action.
> (4) The primary purpose for which the proceedings were brought was not that of securing proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.
> (5) The plaintiff has suffered damages as set forth in section 8353.

4

42 Pa. Cons. Stat. § 8354.

The Third Circuit Court of Appeals has stated that "'a party seeking redress under [the] Dragonetti [Act] bears a heavy burden,' because the plaintiff need not only demonstrate either probable cause or gross negligence, but must also prove the underlying action was filed for an improper purpose." *Schmidt v. Currie*, 217 F. App'x 153, 155 (3d Cir. 2007) (alterations in original) (quoting *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002)); *see Bannar v. Miller*, 701 A.2d 242, 248-49 (Pa. Super. Ct. 1997) (noting examples of improper purpose include bringing a claim known to be invalid to "harass the person proceeded against" or to prevent someone from exercising their First Amendment rights).

The parties here dispute whether Mr. Crescenzo had probable cause to initiate his lawsuit in the first instance and whether he did so for an improper purpose.

### A. Probable Cause

Under the Dragonetti Act, probable cause exists where a person who takes part in the initiation of civil proceedings against another "reasonably believes that under those facts the claim may be valid under the existing or developing law."[4] 42 Pa. Cons. Stat. § 8352. Mr. Crescenzo argues that the Foundation has still failed to allege facts demonstrating that he lacked probable cause to initiate the underlying litigation. He contends that the Foundation does not allege any facts that he should have known that his state court lawsuit was not viable. And thus, he argues, that the Amended Complaint requires the Court to merely infer the possibility that he initiated the

---

[4] Probable cause can also exist in other situations, such as reliance on advice of counsel or if a claim is being brought against the attorney of record who in good faith believed that the civil proceedings were not intended to merely harass. *See* 42 Pa. Cons. Stat. §§ 8352(2)-(3). However, Mr. Crescenzo has not raised such an argument here.

5

earlier litigation for a reason other than to remove Mr. Berg and to secure a declaration that Mr. Crescenzo's removal was ineffective.

In support of its argument that Mr. Crescenzo lacked probable cause, the Foundation contends that Mr. Crescenzo testified during his September 2019 deposition in the state court action that he had no interest in being on the Board, that he had no familiarity with the Foundation's records, that he had not attended a Board meeting in his 10 years as a trustee, and that he had not read any of the Foundation's annual tax returns. Am. Compl. ¶ 17. The Foundation contends that its allegations regarding the state court proceedings and Mr. Crescenzo's "past relationship and history with the Board permit a reasonable inference" that he lacked probable cause for initiating the proceedings. Doc. No. 31-1 at 10. Thus, the Foundation's argument appears to be that Mr. Crescenzo had no reasonable basis for believing his removal was somehow unwarranted, given his testimony that he had no interest in being on the Board in the first place and had not participated in a Board meeting in 10 years.

At the motion to dismiss stage, where the Court must accept the Foundation's allegations as true, the Court is minimally satisfied that those allegations could support a plausible inference that Mr. Crescenzo's state court litigation was a wrongful use of civil proceedings. Mr. Crescenzo initiated civil proceedings against the Foundation in state court in September 2019 and then, shortly after being deposed, withdrew the litigation.[5] Although not explicitly stated in the Amended Complaint, a reasonable inference could be drawn that Mr. Crescenzo did not have probable cause to seek Mr. Berg's removal or to challenge the vote that removed Mr. Crescenzo because he had not meaningfully participated in anything related to the Foundation for quite some

---

[5] Mr. Crescenzo does not appear to dispute that this withdrawal establishes that the proceedings were "terminated in favor" of the Foundation.

6

time. Therefore, the Foundation's allegations that Mr. Crescenzo was not competent or interested in being on the Board arguably call into question the legitimacy of Mr. Crescenzo's state court lawsuit to remove Mr. Berg and to regain his position on the Board.

## B.     Improper Purpose

In addition to pleading facts sufficient to plausibly claim that Mr. Crescenzo acted in a grossly negligent manner or without probable cause when he initiated the state court litigation, the Foundation must also plead facts demonstrating that he acted with an improper purpose. "An improper purpose is 'a purpose other than that of securing the proper discovery, joinder of parties[,] or adjudication of the claim in which the proceedings are based.'" *Montgomery v. Midland Credit Mgmt., Inc.*, No. 12-cv-1244, 2014 WL 3563198, at *8 (E.D. Pa. June 19, 2014) (quoting 42 Pa. C.S. § 8351(a)(1)). "Importantly, '[a]n improper purpose may be inferred where the action is filed without justification.'" *Aiyegbusi v. Nkansah*, No. 19-cv-4319, 2020 WL 3127940, at *6 (E.D. Pa. June 11, 2020) (quoting *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 295 (E.D. Pa. 2009)). "Moreover, whether an alleged purpose is improper is an issue for the [trier of fact] to decide." *Ciolli*, 625 F. Supp. 2d at 295.

This element previously proved to be a stumbling block for the Foundation. *See Found. for Eldercare*, 2021 WL 768063, at *4. However, the Foundation now alleges that Mr. Crescenzo brought the state court litigation to "intimidate, silence, frustrate and force [the] Foundation to incur legal fees out of spite due to his removal as Trustee and Chairman of the Board." Am. Compl. ¶ 20. Mr. Crescenzo retorts that both parties incurred legal fees, and "[t]hese fees serve only to highlight the unpleasant effects of contentious litigation, not an imagined improper purpose" for initiating the state court litigation. Doc. No. 28-2 at 10-11. To be sure, all litigation

7

entails a certain degree of cost. But the focus of the issue at hand is the motivation behind the costly litigation.

The Foundation points to Mr. Crescenzo's deposition testimony in the underlying litigation to establish that his alleged lack of prior involvement or interest in the Board or the Foundation shows that he lacked probable cause to bring suit in the first instance. The Foundation further contends that, given this alleged lack of probable cause and its allegations that Mr. Crescenzo's motivation was to intimidate the Foundation and force it to incur legal fees, the Court can reasonably infer that Mr. Crescenzo brought the lawsuit for an improper purpose.

A plaintiff has a heavy burden to plead, let alone prove, the wrongful use of civil proceedings. However, at this time, the Court finds that the Foundation has alleged enough to reasonably infer for now that Mr. Crescenzo initiated the state court action for an improper purpose.

For the foregoing reasons, the Court denies Mr. Crescenzo's motion to dismiss Count II of the Amended Complaint.

**II. Fraud**

The Court previously dismissed without prejudice the fraud count in the original Complaint. The Court held that Mr. Berg failed to satisfy Rule 9(b)'s heightened pleading requirements. Mr. Berg now alleges, in greater detail, that he first discussed with Mr. Crescenzo, in or around 2018, the proposal that Mr. Crescenzo loan the Foundation $180,000 to pay its then-overdue real estate taxes. Am. Compl. ¶ 51. Mr. Berg asserts that, instead, Mr. Crescenzo offered to personally lend Mr. Berg $180,000, with a mortgage lien on Mr. Berg's personal residence serving as collateral, and Mr. Berg could then in turn lend those borrowed funds to the Foundation. *Id.* ¶ 52.

Mr. Berg claims that he later agreed to Mr. Crescenzo's terms and on March 15, 2019, when they met at a bank in Wayne, Pennsylvania and Mr. Berg signed a notarized indenture of mortgage in favor of Mr. Crescenzo.[6] Mr. Berg then recorded the indenture at the Delaware County Courthouse later that day. *Id.* ¶¶ 53-56. Mr. Berg further alleges that about an hour later, he called Mr. Crescenzo with instructions for wiring the supposedly-agreed to funds but Mr. Crescenzo claimed that he would not fund the loan. *Id.* ¶ 57. As a result, Mr. Berg claims that Mr. Crescenzo "intentionally deceived [Mr.] Berg into believing he would fund the loan upon [Mr.] Berg's delivery of the collateral to [Mr.] Crescenzo." *Id.* ¶ 58. Accordingly, Mr. Berg alleges that Mr. Crescenzo made a "material misrepresentation . . . with knowledge of its falsity when he falsely promised he would loan" Mr. Berg $180,000 "in return for a note and mortgage on [Mr.] Berg's personal residence." *Id.* ¶ 61.

Mr. Crescenzo now argues that the fraud claim should be dismissed because such a claim is "precluded under the 'gist of the action doctrine' and the alleged underlying agreement violates the statute of frauds." Doc. No. 28-2 at 4. Mr. Crescenzo asserts that the gist of the action precludes Mr. Berg from "recasting an ordinary breach of contract claim into a tort claim, such as fraud." *Id.* at 11. He alleges that the fraud claim must be dismissed because it is based on Mr. Crescenzo's alleged oral promise to lend Mr. Berg $180,000 in return for an indenture of mortgage on Mr. Berg's personal residence. Mr. Crescenzo also argues that in order to be binding, the statute of frauds requires that an agreement to lend money in consideration for a mortgage must be in writing. So, Mr. Crescenzo contends, because an oral agreement to lend money in return for a mortgage is unenforceable per the statute of frauds, Count V must be dismissed.

---

[6] Mr. Crescenzo argues that despite having met with Mr. Berg on March 15, 2019, there is no evidence to suggest that he "signed a writing pledging to loan Mr. Berg $180,000 in return for the recorded lien in his favor." Doc. No. 28-2 at 6.

9

Mr. Berg responds only to Mr. Crescenzo's first attack, arguing that Mr. Crescenzo not only breached his contractual duty to fund the loan, but that he also "wrongfully refused to satisfy the lien created when [Mr.] Berg executed a note and recorded a mortgage in reliance on [Mr.] Crescenzo's promises." Doc. No. 31-1 at 14. In turn, Mr. Berg argues that Mr. Crescenzo's subsequent conduct "implicates a broader social duty" that goes beyond a mere contractual breach. Doc. No. 31-1 at 14.

"The gist of the action doctrine provides that a tort claim 'based on [a] party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action . . . although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'" *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (alterations in original) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014)). The Pennsylvania Supreme Court has stated that a claim should be viewed as one for breach of contract "[i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract." *Bruno*, 106 A.3d at 68. The "critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract," is "established by the underlying averments supporting the claim in a plaintiff's complaint." *Id.*

As to fraud, the Pennsylvania Superior Court has explained that these cases "seem to turn on the question of whether the fraud concerned the performance of contractual duties. If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties." *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 20 (Pa. Super. Ct. 2002). Otherwise, "the gist of the action would be the fraud, rather than any contractual relationship between the

parties." *Id.* at 19-20 (holding that "the gist of the action doctrine should apply to claims for fraud in the performance of a contract"). *See Vives v. Rodriguez*, 849 F. Supp. 2d 507, 520 (E.D. Pa. 2012) (noting that "fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract [are likely] barred by the gist of the action doctrine").

The Court recognizes, as it has previously in other cases, that it must exercise "caution" when "dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry." *Takiedine v. 7-Eleven, Inc.*, No. 17-cv-4518, 2019 WL 934994, at *14 (E.D. Pa. Feb. 25, 2019) (quoting *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. 11-cv-4568, 2011 WL 6046923, at *8 (E.D. Pa. Dec. 6, 2011)).

After carefully reviewing the parties' arguments and the allegations in Count V of the Amended Complaint, the Court is not satisfied that the gist of the action doctrine precludes Mr. Berg's fraud claim, especially at the motion to dismiss stage.[7] *See Takiedine*, 2019 WL 934994, at *15 (noting that plaintiff's "claims [likely] arise solely from the contract between the parties," but declining "to determine whether the gist of the action doctrine bars [plaintiff's] conversion claim" at the motion to dismiss stage). Instead, the Court finds that such a dispute is better resolved after the parties have had the benefit of discovery. Indeed, although the Amended Complaint refers to several documents, none of those documents were attached to the Amended Complaint and the one that was, as Exhibit A, appears to have been attached in error.

---

[7] Mr. Crescenzo also argues that the statute of frauds bars the enforcement of the alleged agreement. Mr. Berg did not respond to this argument in his opposition brief. However, because the Court is denying the motion to dismiss Count V, it declines to address any possible statute of frauds issue at this time.

11

Although the Court declines to apply the gist of the action doctrine, Mr. Berg must still have pled enough facts to sustain his claim for fraud at the motion to dismiss stage.[8] To prove fraud under Pennsylvania law, a plaintiff must show: "1) a misrepresentation, 2) material to the transaction, 3) made falsely, 4) with the intent of misleading another to rely on it, 5) justifiable reliance resulted, and 6) injury was proximately caused by the reliance." *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005). Furthermore, in addition to Rule 12(b)(6)'s plausibility requirement, a plaintiff must plead with particularity the circumstances alleging fraud, per Rule 9(b), so that the defendant is on notice of the "precise misconduct" that is being alleged. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Here, the Court is satisfied that Mr. Berg has sufficiently bolstered the factual averments in the Amended Complaint such that his fraud claim meets Rules 12(b)(6) and 9(b) and survives at this stage. As described above, Mr. Berg now alleges the who, what, when and how of the purported fraud. On these facts, Mr. Berg has given "some measure of substantiation" to the allegations in Count V and has put Mr. Crescenzo on notice as to the alleged fraud. *Frederico*, 507 F.3d at 200. Mr. Berg has sufficiently alleged that Mr. Crescenzo made a material misrepresentation, that he made it falsely with the intent that Mr. Berg would rely on it and create and record an indenture of mortgage in Mr. Crescenzo's favor, that Mr. Berg did so, and that Mr. Crescenzo failed to wire the allegedly-agreed upon funds and satisfy the mortgage lien.

For the foregoing reasons, the Court will allow Mr. Berg's fraud claim (Count V) to proceed and deny Mr. Crescenzo's motion to dismiss.

---

[8] In his second motion to dismiss, Mr. Crescenzo no longer attacks the specificity of Mr. Berg's factual allegations regarding Count V's fraud claim.

## Conclusion

For the reasons set forth in this Memorandum, the Court denies Mr. Crescenzo's second motion to dismiss. An appropriate order follows.

BY THE COURT:

_/s/ Gene E.K. Pratter_
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**