IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FOUNDATION FOR ELDERCARE** *et al.,* *Plaintiffs* | : : : : | **CIVIL ACTION** |
| v. | : : | |
| **ROCCO J. CRESCENZO,** *Defendant* | : : : | No. 20-2190 |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION OF THE COURT

PRATTER, J.                                                                                                                    APRIL 4, 2023

Foundation for Eldercare ("the Foundation") and its Executive Director and Trustee John G. Berg brought this action against Rocco J. Crescenzo, a former Chairman of the Foundation's Board of Trustees, for breach of contract and fiduciary duty. Over the course of ten years, the Foundation took out a series of three bank loans for which Dr. Crescenzo acted as either a maker or a guarantor. These loans enabled the Foundation to develop certain land properties, resulting in significant income tax benefits, some of which were distributed to Dr. Crescenzo. The Foundation defaulted on these loans, resulting in foreclosure of several properties and losses to the Foundation. Dr. Crescenzo did not step in to forestall the default.

The Foundation contends that there had been an implied-in-fact *quid pro quo* between the Foundation and Dr. Crescenzo, with Dr. Crescenzo agreeing to make payments on the loans in exchange for receiving income tax benefits. The Foundation also contends that Dr. Crescenzo entered into an express contract in the form of a lease agreement that also obliged him to make payments on one of the loans, and that Dr. Crescenzo breached his fiduciary duty to the Foundation by failing to take steps to prevent default on the loans.

Dr. Crescenzo, in turn, denies the existence of any implied contract with the Foundation and contends that his signature on the lease agreement was forged by Mr. Berg. He counterclaims that Mr. Berg committed fraud and breached his own fiduciary duty to Montgomery-Cecil LP, a partnership in which both Dr. Crescenzo and Mr. Berg were partners, that was involved in several of the transactions at issue here.

The Court presided over a non-jury trial on February 14 and 15, 2022. The parties submitted their respective proposed findings of fact and conclusions of law. Upon consideration of these proceedings and based on the evidence presented, the Court concludes, as set forth below, that (1) the Foundation and Mr. Berg did not carry their burden as to any of the claims presented, and (2) Mr. Crescenzo did not carry his burden as to any of his counterclaims.

## I. Findings of Fact

1. Foundation for Eldercare ("the Foundation") is an IRS certified public charity domiciled within the Commonwealth of Pennsylvania for the purpose of providing housing for low-income and handicapped senior persons. February 14, 2022 Tr. at 23:9-17 [hereinafter, "Day 1 Tr."]

2. John Berg is the Executive Director and a Trustee of the Foundation and has served in that role since 2009. Berg. Dep. 18:13-23.

3. At all relevant times, Dr. Crescenzo was Chairman of the Foundation. Day 1 Tr. 26:5-7, Crescenzo Dep. 30:5-7.

4. From 2009 to 2018, Dr. Crescenzo agreed to participate in three bank loans with the Foundation, either as a co-borrower or guarantor. *Id.* at 39:21-40:19, Exhibit P-6. Mr. Berg told Dr. Crescenzo that he was required to do so on behalf of the Foundation as its Chairman. February 15, 2022 Tr. at 124:10-15 [hereinafter "Day 2 Tr."]. Mr. Berg also told Dr. Crescenzo

that he (Dr. Crescenzo) would not be personally liable for these loans because they were "in rem" only. *Id.* at 125:1-7.

5. Dr. Crescenzo and Mr. Berg arranged for loans with Peoples Bank totaling $2,029,600. Ex. P-28, P-29.

6. Dr. Crescenzo guaranteed a loan with Fulton Bank to the Foundation in the amount of $546,000. Ex. P-58, P-59, P-60.

7. Dr. Crescenzo guaranteed a loan with Money One Federal Credit Union to the Foundation in the amount of $900,000. Ex. P-50.

8. Dr. Crescenzo understood the terms of these loans; he was represented by counsel; and he signed the loan documents of his own volition. Day 2 Tr., 152:25-153:15.

9. These loans were used to purchase tracts of land and develop them, including the construction of single-family homes. Ex. P-42, P-43. Pursuant to these activities, Dr. Crescenzo had distributions of charitable tax deductions in 2009, 2010, 2011, and 2012. Day 1 Tr. at 43:1-15, Ex. P-6. Portions of these deductions were carried forward for use with Dr. Crescenzo's taxes from 2010 to 2018. Day 1 Tr. at 31:25-32:5; 33:2-34:5; 35:21-36:19, Ex. P-6.

10. Montgomery-Cecil, LP ("MC-LP") is a limited partnership formed under the laws of the State of Maryland in 1993 for the purpose of making investments in real property. Day 1 Tr. at 27:20-28:3. Also in 1993, MC-LP purchased 148 acres of land in Cecil County, Maryland. Day 1 Tr. at 30:5-17. On December 15, 2015, the surviving partner of MC-LP, Barry Montgomery, transferred his general partner interest to Dr. Crescenzo and his limited partnership interests to Kimberton Farming Associates, Inc., a Pennsylvania corporation. Ex. D-59. That same day, the partnership agreement was amended to make Kimberton Farming Associates, Inc. general partner. Ex. D-60.

3

11. On December 15, 2017, the partnership agreement was amended again to make Mr. Berg the general partner of MC-LP. Ex.t D-61. As general partner, Mr. Berg caused MC-LP's 148-acre property to be subdivided into two adjacent tracts, one of 40 acres and the other of 108 acres. Day 1 Tr. at 30:5-31:24. The 40-acre tract was donated to the Foundation, leading MC-LP to claim a charitable tax deduction. Day 1 Tr. 32:19-34:5.

12. On January 25, 2018, the partnership agreement was amended once again, with Dr. Crescenzo replacing Mr. Berg as MC-LP's general partner. Ex. D-62.

13. Mr. Berg arranged for the donation of the 40-acre tract to pass tax deductions to Dr. Crescenzo, along with various other members of his family who were limited partners in MC-LP. Day 1 Tr. at 30:5-31:24. Dr. Crescenzo received a K-1 Form from the Foundation and claimed a charitable deduction of $1,837,564 on his personal income federal tax return for tax year 2016. Day 1 Tr. at 35:12-20, Ex. P-7, P-15. Portions of this deduction were carried forward for Dr. Crescenzo's taxes in 2017 and 2018. Day 1 Tr. at 33:20-34:5, 35:21-36:19, Ex. P-6. Dr. Crescenzo understood that these charitable deductions lowered his taxes. Day 2 Tr. at 119:21-120:10.

14. Mr. Berg signed Dr. Crescenzo's name using a camera impression on a lease agreement with the Foundation for certain properties acquired with funds from the Peoples Bank loan. Ex. D-85. Under the terms of this agreement, Dr. Crescenzo allegedly agreed to lease the properties back to the Foundation. *Id.* The purpose of this arrangement was to realize certain depreciation tax benefits. Day 2 Tr. 77:4-14. The agreement also recited Dr. Crescenzo's preexisting obligations to Peoples Bank and provided that payments made to Peoples Bank would be considered rent under the agreement. Ex. D-85, Day 2 Tr. 78:1-4.

15. Peoples Bank entered confessions of judgment against the Foundation and Dr. Crescenzo for defaulting on the loan. Ex. P-39, P-40. Dr. Crescenzo made no payments to Peoples Bank. Day 2 Tr. at 166:6-7. As a result of the default, Peoples Bank foreclosed, causing the Foundation to lose its interests in 18 properties, totaling approximately $2,378,986. Day 1 Tr. 42:22-24, 101:4-12, Ex. P-41.

16. The Fulton loan was secured by a 108-acres land property, appraised at a value of $8,000,000. Ex. P-60, P-62. As a result of nonpayment, the Foundation defaulted on this loan, and Fulton foreclosed on the property. Day 1 Tr. 75:8-9. Dr. Crescenzo entered into a "standstill agreement" with Fulton whereby the property was ultimately sold at auction for $350,000. Day 2 Tr. 135:16-136:2.

17. Mr. Berg made payments on the Money One loan for 14 months, from June 2017 until August 2018. Day 2 Tr. 139:14-23. Money One issued a default letter in October 2018. Ex. D-81.

## DISCUSSION

### I. The Foundation and Mr. Berg's Claims

#### a. Breach of Contract

To establish a breach of contract claim, plaintiffs must first demonstrate the existence of a contract, either express or implied. For the reasons that follow, the Court finds that the Foundation and Mr. Berg's implied and express contract theories are unavailing.

#### i. Implied Contract

An implied-in-fact contract is one that "legitimately can be inferred from the intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Martin v. Little, Brown and Co.*, 450 A.2d 984, 987(Pa. Super. Ct. 1981)

(internal quotation marks omitted). In the typical case, courts infer an agreement where one party renders services "of a character that is usually charged for," the other party does not object, and the circumstances do not indicate that the service was voluntarily given. *Id.*

The Foundation and Mr. Berg contend that the "service" in question was Dr. Crescenzo's participation in obtaining the loans at issue, either as a co-maker or guarantor. As to whether this service is one that is "usually charged for," the Court notes that guaranteeing loans is a service that is commonly provided by surety companies and insurers in exchange for payment of a fee or premium. *See, e.g., Reginella Const. Co., Ltd. V. Travelers Cas. and Sur. Co. of Am.*, 949 F. Supp. 2d 599, 603 (W.D. Pa. 2013) ("[I]t is common practice in the construction industry for general contractors to purchase surety bonds which guarantee the general contractor's performance of the work and its payment of subcontractors and suppliers."); *Cont'l Bank v. Axler*, 510 A.2d 726, 729 (Pa. Super Ct. 1986) ("Customarily, a suretyship arrangement arises when a creditor refuses to extend credit to a debtor unless a third party (the surety) agrees to provide additional security for repayment of the debt . . . ."). Individuals, however, do, on occasion, personally guarantee loans, such as, perhaps, for family members, without any expectation of payment. There was no dispute that Dr. Crescenzo—a medical doctor—is not in the business of guaranteeing loans, and there is no indication that he has ever agreed to do so in exchange for payment or otherwise. Therefore, the Court cannot infer the existence of an implied-in-fact contract merely based on Dr. Crescenzo's guarantee.

The Foundation and Mr. Berg point to Dr. Crescenzo's receipt of income tax deductions as evidence of an implied agreement. During the same period that Dr. Crescenzo guaranteed the loans at issue, he received tax deductions which significantly reduced his income tax liability. The Foundation and Mr. Berg suggest that this coincidence of guaranteeing loans and reaping tax

benefits establishes a course of practice and a *quid pro quo* understanding. But coincidence alone cannot establish an implied contract. The Foundation and Mr. Berg cite no other evidence to suggest the existence of an agreement.

To the contrary, Dr. Crescenzo testified that he guaranteed the loans at issue not in exchange for tax benefits, but because he believed that doing so was somehow his duty as Chairman of the Foundation. *See* Day 2 Tr. 124:10-15. Mr. Berg also testified that he set up the relevant tax structures to also give tax deductions to several members of his family who did *not* act as guarantors on any of the loans. *See* Day 1 Tr. 31:2-19. The Foundation and Mr. Berg do not explain why Dr. Crescenzo—who is also related to Mr. Berg—would have understood that only his tax deductions were in exchange for a promise to guarantee the loans when no one else was expected to undertake such an obligation. In fact, Mr. Berg testified that he told Dr. Crescenzo that he needed to act as a co-maker for at least one of the loans because this was necessary under the Tax Code to receive deductions. Day 1 Tr. 48:15-20. Thus, to the extent Dr. Crescenzo may have been aware of any connection at all between his guaranteeing of the loans and tax deductions, the record demonstrates that he understood this connection to be based on a general legal necessity, rather than a contractual obligation costly to himself only.

But even assuming there was an implied agreement that Dr. Crescenzo would guarantee the loans in exchange for tax benefits, it does not follow that this agreement also included the separate obligation to the Foundation and Mr. Berg that Dr. Crescenzo would assume responsibility for preventing the loans from defaulting. Typically, a guarantor's obligation to make loan payments is to *the creditor*, not the principal debtor. *Cf. Ford Motor Credit Co. v. Lototsky*, 549 F. Supp. 996, 998 (E.D. Pa. 1982) ("[A] guaranty is a collateral promise or undertaking by one person to answer for the payment of some debt in the case of default of another who is liable

for such payment in the first instance.") (citing *Atalanta Corp. v. Ohio Valley Provision Co.*, 414 A.2d 123, 126 (Pa. 1980)). Here, there is no evidence that Dr. Crescenzo, in guaranteeing the loans, agreed to assume a separate liability *to the Foundation and Mr. Berg* for any losses incurred due to his failure to fulfill his obligation to the creditor banks. To the contrary, Dr. Crescenzo testified that he did not even understand he was assuming personal liability to the banks themselves; he believed, based on representations from Mr. Berg, that he would not be personally liable at all because the loans were "in rem."[1] *See* Day 2 Tr. 124:16-125:7. This suggests that Dr. Crescenzo did not believe that he was taking on the ordinary duties of a guaranty contract, let alone a separate set of obligations to the Foundation and Mr. Berg.

Therefore, the Court finds that there was no implied agreement between Dr. Crescenzo and the Foundation and Mr. Berg by which Dr. Crescenzo had any obligation to the Foundation and Mr. Berg to step in and prevent the default on any of the loans at issue.

### ii. Express Contract

The Foundation and Mr. Berg assert that Dr. Crescenzo's obligation to step in to prevent default on one of the loans, with Peoples Bank, arises from a land lease agreement between Dr. Crescenzo and the Foundation. *See* Ex. D-85. Under this agreement, properties acquired with funds from the Peoples Bank loan were acquired by Dr. Crescenzo, who agreed to lease them back to the Foundation. *Id.* Mr. Berg testified that the purpose of this arrangement was to obtain certain depreciation tax benefits. *See* Day 2 Tr. 77:4-14.

Relevant here is Section 4 of the agreement, which provides that Dr. Crescenzo "will pay such payments of principal and interest" on the Peoples Bank loan "and observe such conditions as are more fully set forth in the Peoples Bank loan documents." Ex. D-85. The parties dispute

---

[1] On this issue, the Court finds Dr. Crescenzo's testimony credible as to his understanding at the time the guarantees were made.

8

whether Dr. Crescenzo actually signed this agreement, or whether his signature was forged, perhaps by Mr. Berg, using a camera impression of Dr. Crescenzo's signature. Day 2 Tr. 75:3-76:21, 123:13-24.

The Court need not resolve this factual dispute regarding Dr. Crescenzo's signature, however, because the lease agreement does not impose on Dr. Crescenzo an obligation to the Foundation for failure to repay the Peoples Bank loan. Rather, Section 4 merely references Dr. Crescenzo's pre-existing obligations to Peoples Bank and provides that payments made to Peoples Bank will be considered rent under the agreement. Ex. D-85. The Foundation and Mr. Berg do not seriously contend otherwise. Mr. Berg testified that Section 4 "simply recite[d] that [Dr. Crescenzo] did execute [the Peoples Bank loan] documents" and that the lease agreement "doesn't in and of itself obligate him." Day 2 Tr. 78:1-6. The Court concludes that the lease agreement does not impose on Dr. Crescenzo any obligation to the Foundation or Mr. Berg to make loan repayments to prevent default.

Because the Court concludes that Dr. Crescenzo had no contractual obligation—either express or implied—to the Foundation or Mr. Berg with respect to repayment of the loans at issue, it enters judgment in favor of Dr. Crescenzo on the Foundation and Mr. Berg's breach of contract claim.

### b. Breach of Fiduciary Duty

The Foundation and Mr. Berg's complaint also alleges that Dr. Crescenzo breached his fiduciary duty to the Foundation by failing to make loan repayments to prevent default. Am. Compl. at 5-7 (Doc. No. 26). It is unclear, however, whether this claim remains in the litigation. In their pretrial memorandum, the Foundation and Mr. Berg stipulated to the dismissal of several claims, leaving only those claims related to Dr. Crescenzo's "guarantees to [the] Foundation and

9

MC-LP." Doc. No. 53 at 16. The pretrial memorandum does not explain whether such "guarantees" include only the breach of contract claims or also the claim for breach of fiduciary duty. Regardless, the Foundation and Mr. Berg made no reference to the fiduciary duty claim in their proposed findings of fact and conclusions of law. Therefore, the Court deems these claims are abandoned and enters judgment in favor of Dr. Crescenzo.[2]

## II. Dr. Crescenzo's Counterclaims

### a. Breach of Fiduciary Duty

Dr. Crescenzo brings a counterclaim alleging that Mr. Berg violated his fiduciary duty to MC-LP by (1) unilaterally transferring a 40-acre plot of land as a gift to the Foundation, thereby leaving MC-LP with insufficient assets to pay off the Fulton loan; and (2) failing to disclose a financial transaction with another company, Global Solutions Partners, that was owned by Ellen Cottril, who was both a limited partner and Mr. Berg's daughter. But Dr. Crescenzo offers no legal argument for how these actions would constitute a breach of Mr. Berg's duty to MC-LP, apart from a general recitation of the duties of care and loyalty owed under Maryland law. Dr. Crescenzo also asserts that Mr. Berg breached his fiduciary duties to the Foundation by engaging in self-dealing and preventing the Foundation from being able to satisfy its loan obligations. However, Dr. Crescenzo makes this claim without articulating a real legal theory for his counterclaim.

The Court is not obliged to piece together Dr. Crescenzo's legal arguments for him, however, particularly because he has also failed to identify any damages—an essential element to

---

[2] Even if the Foundation and Mr. Berg had continued to press their claim for breach of fiduciary duty, the Court would conclude, based on the lack of factual support in the record, that the Foundation and Mr. Berg have failed to carry their burden on this claim.

a claim for breach of fiduciary duty under both Pennsylvania and Maryland law.[3] *See Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31-32 (Pa. Super. Ct. 2020); *Plank v. Cherneski*, 231 A.3d 436, 481-82 (Md. 2020). Thus, the Court enters judgment in favor of the Foundation and Mr. Berg on this counterclaim.

### b. Fraud

Dr. Crescenzo also counterclaims for fraud, alleging that Mr. Berg fraudulently signed his name, using a camera impression, on the lease agreement for the property acquired using the Peoples Bank loan. Doc. No. 38 ¶¶ 82-88. As discussed above, however, the parties do not dispute that this lease agreement merely reiterated Dr. Crescenzo's preexisting obligations to Peoples Bank, and Dr. Crescenzo's counterclaim does not seek any specific compensatory damages for the alleged fraudulent signature. This leaves only Dr. Crescenzo's prayer for punitive damages.

Under Pennsylvania law, "[p]unitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct." *J.J. Deluca Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 415-16 (Pa. Super. Ct. 2012) (citation omitted). Moreover, "in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Snead v. Soc'y for Prevention of Cruelty to Animals of Pa.*, 929 A.2d 1169, 1184-85 (Pa. Super. Ct. 2007), *aff'd*, 985 A.2d 909 (Pa. 2009). "The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder,"

---

[3]   Likewise, the Court finds that the Foundation and Mr. Berg have failed in equal measure to carry their burden to identify any damages with respect to their breach of fiduciary duty claim.

11

meaning the Court in this case. *Weston v. Northampton Pers. Care, Inc.*, 62 A.3d 947, 961 (Pa. Super. Ct. 2013).

The parties dispute whether Mr. Berg obtained express authorization from Dr. Crescenzo to sign his name on the lease agreement using the camera impression. The parties also dispute whether—even absent express authorization—Mr. Berg was nonetheless authorized to sign Dr. Crescenzo's name under a broad power of attorney which Dr. Crescenzo testified authorized Mr. Berg to dispose of some or all of his property without advance notice or approval. Ex. P-24, Day 2 Tr. at 163:1-7. Again, the Court need not resolve this factual dispute. It suffices that, in light of the evidence in the record, the Court does not find that Mr. Berg's use of the camera impression demonstrates either the subjective appreciation of the risk of harm to Dr. Crescenzo or the conscious disregard of that risk necessary to award punitive damages. Thus, even if the Court were to find Mr. Berg's conduct fraudulent (which it does not), it would decline to exercise its discretion to award any punitive damages. The Court therefore enters judgment in favor of the Foundation and Mr. Berg on this counterclaim.

### c. Fraud in the Inducement

Dr. Crescenzo brought a counterclaim for fraud in the inducement, alleging that Mr. Berg fraudulently induced him into acting as a co-maker and guarantor on the loans at issue by promising him that he would not incur any personal liability because the Foundation would pay its debts. At trial, however, Dr. Crescenzo testified that there was no fraudulent inducement, that he understood the terms of the loans, was represented by counsel, and signed them of his own volition. Day 2 Tr. at 152:25-153:15. Post-trial, Dr. Crescenzo does not appear to press this counterclaim and does not articulate a legal theory in support of it. The Court concludes that Dr. Crescenzo has

not met his burden and enters judgment in favor of the Foundation and Mr. Berg on this counterclaim.

### d. Conversion

Dr. Crescenzo brings a counterclaim against Mr. Berg for conversion. Conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Spector Gadon & Rosen, P.C. v. Rudinski, Orso & Lynch*, 231 A.3d 923, 925 (Pa. Super. Ct. 2020). "Money can be the subject of conversion." *Id.* To prevail on his conversion counterclaim, Dr. Crescenzo must establish that he "was the owner of [the money at issue] at the time that [Mr. Berg] took possession of it, and that [Mr. Berg] took possession without justification or [Dr. Crescenzo's] consent." *Acme Mkts., Inc. v. Seltzer*, 244 A.3d 469, 474 (Pa. Super. Ct. 2020).

The only evidence that Dr. Crescenzo musters to prove that Mr. Berg took money from him without consent is an email from Mr. Berg stating that he had withdrawn $60,000 from one of Dr. Crescenzo's accounts and promising to pay it back. Ex. D-93; Day 2. Tr. at 142:6-143:9. There is no evidence, however, that this money was ever in fact withdrawn from Dr. Crescenzo's account—no bank statements, no receipts of transactions, no account balances. With no proof that any deprivation actually occurred, Dr. Crescenzo has failed to carry his burden on this counterclaim. The Court enters judgment in favor of Mr. Berg.

### e. Forgery and Identity Theft

Dr. Crescenzo counterclaimed for forgery and identity theft, again alleging that Mr. Berg used a camera impression without authorization to sign Dr. Crescenzo's name on the lease agreement with the Foundation, as well as on various partnership documents to make Dr. Crescenzo the general partner of MC-LP. As discussed above, however, even if the Court were to

13

find that Mr. Berg's use of the camera impression was unauthorized, Dr. Crescenzo has not demonstrated that he suffered any damages from having his name signed on the lease agreement. Similarly, Dr. Crescenzo has failed to carry his burden to show that he suffered any damages from being made general partner of MC-LP. The Court enters judgment in favor of Mr. Berg on this counterclaim.

### f. Unjust Enrichment

Dr. Crescenzo brought a counterclaim for unjust enrichment, alleging that Mr. Berg benefitted himself financially while allowing the Foundation to default on its loan obligations. At trial, however, Dr. Crescenzo did not elicit testimony on these issues, nor did he address this counterclaim in his proposed findings of fact. The Court deems this counterclaim abandoned and enters judgment in favor of Mr. Berg.

### g. Breach of Contract

Finally, Dr. Crescenzo brings a counterclaim for breach of contract against the Foundation and Mr. Berg, alleging that the Foundation took out various loans from Dr. Crescenzo that it has failed to pay back. But as Dr. Crescenzo admits in his proposed findings of fact, there are no written records of these loans. The only evidence as to the existence of these loans is the Foundation's tax returns, which state that as of tax year 2020 various loans were outstanding, Ex. D-10, and Mr. Berg's deposition testimony that some portion of these loans were due to Dr. Crescenzo, Ex. D-13, Ex. D-11. There is no evidence as to the terms of these loans, whether and to what degree they were paid back, or even that borrowed funds were ever transferred from Dr. Crescenzo to the Foundation or Mr. Berg. Simply put, using solely the Foundation's tax return, Dr. Crescenzo cannot carry his burden to establish both the existence of a contract and that the

14

Foundation and Mr. Berg's alleged breach. The Court enters judgment in favor of the Foundation and Mr. Berg on this counterclaim.

## CONCLUSION

For the foregoing reasons, the Court finds that neither party has satisfied their respective burdens as to any of the asserted claims and counterclaims. Therefore, the Court enters judgment in favor of Dr. Crescenzo as to all of the Foundation and Mr. Berg's claims and in favor of the Foundation and Mr. Berg as to all of Dr. Crescenzo's counterclaims. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE